[L. A. No. 5162. In Bank.—November 22, 1920.]

A. W. BAILEY, Respondent, v. JOHN W. SWARD, INCORPORATED (a Corporation), et al., Defendants; CHIN SAM & COMPANY, Defendant and Appellant.

[1] CONTRACT—INTEREST IN RICE CROP—RIGHTS OF MORTGAGEE AND LESSEES—CONSTRUCTION.—The right of the mortgagee of a growing crop of rice subject to outstanding crop leases by which the lessees were entitled to two-thirds interest in the crops on harvest of the same is, as to the remaining one-third interest, paramount to any rights of the lessees under a provision of the lease contract providing for the refunding of money advanced by the lessees to the lessor in either gold coin or in rice at the prevailing market price when the division of the crop was made, since such

provision was a promise and not a pledge, and in view of the fact that under the contract title to the crop was to be in the lessor until division of the crop was made.

APPEAL from a judgment of the Superior Court of Kern County. Milton T. Farmer, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. J. Emmons and Emmons & Johnstone for Appellant.

N. E. Conklin, L. D. Manning, H. B. Griffith and Ostrander & Carey for Respondent.

SHAW, J.—The defendants, Chin Sam & Company, appeal from a judgment for the plaintiff.

The action was to foreclose a chattel mortgage executed by John W. Sward, Incorporated, to Dana Burks and afterward assigned to the plaintiff, covering the rice crop grown on certain three hundred acres of land by Chin Sam & Company in the year 1915.

The case presents the question whether the right of Chin Sam & Company, a copartnership, to hold one-third of said crop as payment for money advanced by Chin Sam & Company to Sward Company was paramount to the right of the mortgagee of said part of the crop.

The crop was grown by Chin Sam & Company under an instrument denominated a lease, dated January 14, 1915, executed by Sward Company to Chin Sam & Company. It provided that Chin Sam & Company should have the land during the cropping season of 1914 for the purpose of raising and growing a crop of rice thereon. Sward Company was to plow and check the land, build the necessary irrigation ditches, furnish the lumber necessary to build a barn, house, and cook-house, and for weirs and boxes for irrigating ditches, and survey the land. Chin Sam & Company were to put in the necessary weirs and boxes for irrigation, sow and plant the land to rice, irrigate and cultivate the same in a proper manner, and, when ripe, harvest, thresh, and sack the same. The solution of the question depends upon the effect of the following provisions:

"It is hereby mutually agreed that when all of the foregoing provisions have been kept and performed by [Chin

Sam & Company] as herein provided, they shall be entitled
to receive two-thirds of the crop so threshed, the same to be
divided between the parties hereto in the field [Sward Com-
pany] taking one-third of the entire crop in the field, [Chin
Sam & Company] taking the remaining two-thirds, the title
to the whole crop being and remaining in [Sward Com-
pany] until division is made; the one-third retained by
[Sward Company] shall be its rental share, for the use and
occupation of said premises by [Chin Sam & Company],
but nothing in the foregoing to be construed so as to prevent
said [Chin Sam & Company] hauling said crop to cover as soon
as threshed. . . . [Sward Company] agrees to haul its share
of the crop from the field. . . .

"In consideration of [Sward Company] agreeing to se-
cure financial assistance to [Chin Sam & Company] with
which to harvest and market the rice crop, [Chin Sam &
Company] hereby agree to advance to [Sward Company]
in United States gold coin, the sum of $2,000.00, payable
$1,000.00 upon the execution of this agreement, the receipt
whereof is hereby acknowledged by the first party, $1,000.00
on or before thirty days hereafter. Upon conclusion of the
first harvest and threshing of the crop herein provided for
to be grown, [Sward Company] agrees to refund the
$2,000.00 in gold coin of the United States, or in rice at
the prevailing market price when division of the crop is
made."

The mortgage held by the plaintiff was executed on June
18, 1915. It purported to mortgage to Burks the entire
"crop of rice now being, standing and growing upon that
certain piece or parcel of land [describing the land leased
to Chin Sam & Company], subject to the outstanding crop
leases on said described premises by which the lessees are
entitled to two-thirds interest in the crops on harvest of
the same, providing that they have fulfilled the terms of
said crop leases." The mortgage was duly recorded in the
office of the county recorder in the chattel mortgage record.
The lease to Chin Sam & Company was duly recorded in
the recorder's office in the record kept for the recording of
leases, but was not executed or recorded as a chattel mort-
gage. The finding of the court was that neither Burks
nor Bailey had actual or constructive notice at the time
of advancing the money secured by the chattel mortgage

of any clause or clauses in the lease aforesaid other than was given by the statement in the mortgage that it was subject to the outstanding crop leases by which the lessees were entitled to two-thirds interest in the crops, but that before making the advances both Burks and Bailey had visited the premises and knew that Chin Sam & Company were in the occupation thereof and were cultivating the crop thereon.

After the crop was harvested, threshed, and sacked by Chin Sam & Company, as provided in the lease, it was found that one-third thereof consisted of 1,080 sacks. The two thousand dollars mentioned in the last-quoted paragraph of the lease was advanced by Chin Sam & Company to Sward Company but had not been refunded to them in money. The 1,080 sacks which comprised the share of Sward Company was not enough to repay the two thousand dollars advanced to it by Chin Sam & Company. Thereupon, instead of delivering the 1,080 sacks to Sward Company or to the plaintiff as holder of the mortgage, Chin Sam & Company kept the same in their possession, claiming that they were entitled to the share of Sward Company under that part of the lease which provided that Sward Company should refund the two thousand dollars in gold coin, ''or in rice at the prevailing market price when division of the crop is made.'' The only point presented in the case is the question whether or not they are justified in making this claim.

[1] While the instrument executed by Sward Company to Chin Sam & Company is named a lease, yet, as the title to the crop was to be in the lessor from the time of planting until the division was made, it is more in the nature of a cropping contract. Whatever be its nature, however, the fact that under its provisions the title to the entire crop was to be in Sward Company until the division took place is a controlling factor in the case. The mortgage purporting to include the entire crop was expressly made subject to the crop lease ''by which the lessees are entitled to two-thirds interest in the crops on harvest of the same.'' Consequently it did not cover the interest of Chin Sam & Company in that two-thirds share, although the title to that part of the crop was, at the time of its execution, vested in Sward Company. Chin Sam & Company could under

no circumstances have or obtain title under the lease to the one-third of the crop going to Sward Company until the division was made. There is nothing in the lease which purports to create a lien on or pledge of that portion of the crop in favor of Chin Sam & Company against Sward Company. The provision is, in effect, merely that at the time of the division Sward Company had the option either to pay the two thousand dollars in coin or to pay it in rice at the prevailing market price. It was a promise to pay, not a pledge. It is true Chin Sam & Company were in possession of the rice, but in view of the fact that the title thereto was to remain in Sward Company until division and afterward unless Sward Company failed to repay the advances in money, the possession of Chin Sam & Company prior to that time was merely as bailee and not as pledgee, and it gave them no right to withhold the rice as against the holder of said mortgage. It follows that the decision of the court below was correct.

In view of this conclusion, it is immaterial whether Burks or Bailey had or had not actual or constructive notice of the provision of the lease whereby Sward Company promised to repay the advances in rice.

The judgment is affirmed.

Olney, J., Sloane, J., Wilbur, J., Lennon, J., Angellotti, C. J., and Lawlor, J., concurred.